IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ALLEN PAYETTE,

                                                      OPINION and ORDER
                    Plaintiff,
                                                      07-cv-242-bbc
          v.

SHERIFF RANDY HOENISCH,
BOB DICKMAN, WILLIAM BEAUDRY,
SETH WISKOW, DEBRA GLEASON,
CARY PELLOWSKI, SHELIA WESTCOTT,
MICHAEL SCHAEFER, and
DENNIS ROTHERING,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

          This is a civil action for monetary relief brought pursuant to 42 U.S.C. § 1983.

Plaintiff Allen Payette contends that while he was housed at the Marathon County jail in

October 2006, defendants Cary Pellowski and William Beaudry conducted a strip search of

him in a manner intended to humiliate and inflict psychological pain and that defendants

Randy Honeisch, Bob Dickman, Seth Wiskow, Cary Pellowski, Debra Gleason, Shelia

Westcott, Michael Schaefer and Dennis Rothering were deliberately indifferent to his serious

mental health needs.

          The case is before the court on remand from the court of appeals.  Plaintiff's initial

1

complaint included his current claims as well as an additional claims of deliberate indifference, excessive force and a denial of access to the courts. In the previous proceeding, Judge Shabaz granted summary judgment in defendants' favor on all claims. On appeal, the Court of Appeals for the Seventh Circuit affirmed Judge Shabaz's decision on all but the two claims involving the strip search and indifference to plaintiff's mental health needs. With respect to the deliberate indifference claim, the court of appeals concluded that "[b]y disregarding the fresh advice for mental health treatment prompted by recent shocking behavior, and by using only painful restraints to control a patient for whom mental health treatment was now recommended, jail officials seriously imperiled [plaintiff's] mental health." Payette v. Hoenisch, 284 Fed. Appx. 348, 352 (7th Cir. 2008). In addition, the court of appeals found that the district court order had not addressed plaintiff's strip search claim in its entirety. Id. at 353. Finding a genuine dispute whether defendants were deliberately indifferent to plaintiff's mental health or conducted an illegal strip search, the court of appeals remanded the case for further proceedings.

On November 13, 2008, plaintiff filed an amended complaint with allegations relevant only to the current claims. (Plaintiff proceeded pro se before Judge Shabaz. He is now represented by counsel.) I granted plaintiff leave to proceed on these claims under 28 U.S.C. § 1915A. On May 30, 2009, defendants moved for summary judgment on both claims. With respect to plaintiff's illegal strip search claim, defendants contend that the

named defendants, Pellowski and Beaudry, were not present during the illegal body cavity search and that the search was not conducted in an unconstitutional manner. With respect to plaintiff's claim regarding lack of mental health treatment, defendants Hoenisch, Pellowski, Gleason, Westcott, Schaefer and Rothering allege that they never knew that plaintiff's mental health problems required treatment and defendants Dickman and Wiskow assert that even though they knew about plaintiff's condition, they are not liable because defendant Wiskow took action to respond to plaintiff's concerns by scheduling him for a mental health evaluation.

On April 29, 2009, plaintiff filed an opposition brief but did not respond to defendants' proposed findings of fact. Therefore, defendants' proposed findings of fact may be deemed undisputed in accordance with this court's Local Rules II.C. Hedrich v. Board of Regents of University of Wisconsin System, 274 F.3d 1174, 1177 (7th Cir. 2001) (upholding Western District of Wisconsin's local rules admitting moving party's proposed findings of fact when non-moving party fails to respond properly).

Because defendants Pellowski and Beaudry were not present during the body cavity search on October 1, 2006, and plaintiff has presented no evidence to support his claim that the search was humiliating or intended to inflict psychological pain, I will grant defendants' motion for summary judgment on the illegal search claim. I will grant defendant' motion with respect to plaintiff's deliberate indifference claim against defendants Hoenisch,

Pellowski, Gleason, Westcott, Schaefer and Rothering because the undisputed facts show that these defendants did not know that plaintiff had been diagnosed as needing mental health treatment for his self-destructive behavior.  However, I will deny defendants' motion with respect to defendants Dickman and Wiskow because an issue remains as to whether their failure to provide plaintiff any mental health treatment constitutes deliberate indifference.

For the sole purpose of deciding defendants' motion, I find from defendants' proposed facts that the following facts are both undisputed and material.

## UNDISPUTED FACTS

### A. Parties to Lawsuit

Plaintiff Allen Payette is an inmate at the Wisconsin Resource Center in Winnebago, Wisconsin.  At all times relevant to this lawsuit, plaintiff was in the custody of the Marathon County jail.  He was booked and received at the jail on March 20, 2006 and released from jail on October 17, 2006, and sent to the New Lisbon Correctional Institution, New Lisbon, Wisconsin.

Defendant Randy Hoenisch is the sheriff for Marathon County, Wisconsin. Hoenisch had no knowledge of any medical recommendations for plaintiff and did not personally approve or direct the jail staff in any activities related to plaintiff's confinement.

4

At all times relevant to this case, defendants Robert J. Dickman, William Beaudry, Seth Wiskow, Debra Gleason, Cary Pellowski, Sheila Westcott, Michael Schaefer and Dennis Rothering were employed at the Marthon County jail.  Defendant Dickman was the jail administrator.  Defendant Beaudry was a corrections officer.  Defendants Wiskow, Gleason, Pellowski, Westcott, Schaefer and Rothering were corrections supervisors.

## B.  Contracted Health Care Providers at Jail.

Marathon County contracted with North Central Health Care in Wausau, Wisconsin to provide mental health care to inmates at the jail.  North Central provided regular weekly visits with inmates if its staff determined that a visit was necessary or if visits were scheduled by jail staff.  Its staff conducted evaluations and treatment recommendations regarding inmates' medical, counseling and mental health care need while at the jail.  North Central did not provide individual therapists to inmates at the jail.

## C.  Strip Search and Body Cavity Search

On the morning of October 1, 2006, Corrections Officer Brett Klug gave plaintiff a plastic shaving razor so he could shave.  At approximately 8:15 a.m., plaintiff told Corrections Officers Klug and Roderick Bell that he accidentally flushed the razor down the toilet; this information was immediately reported to defendant Wiskow.  Concerned with

5

the potential danger of a missing razor, Wiskow ordered a search of the cell as well as a strip search of plaintiff.  Officers Klug and Bell escorted plaintiff to the property room where an initial, visual strip search was conducted.  No other jail personnel were present during the initial search.

During the initial inspection, the officers saw a plastic bag hanging from plaintiff's anus.  Officer Bell told plaintiff to remove the plastic bag from his anus, which he did.  Officer Bell observed another piece of plastic stuck inside plaintiff's anus.  Plaintiff said he did not know where it came from and that he could not pull it out.

Plaintiff was ordered to put his clothes back on and placed in receiving cell number 3, so that a search of his cell could be performed.  Defendant Wiskow determined that medical staff would have to perform a body cavity search of plaintiff and called nurse Tom Ralph to conduct the search.  In the meantime, Officer Bell and Officer Klug questioned plaintiff about a plastic hanging from his anus.  Plaintiff then told the officers that he had a razor blade stuck up his anus and that he intended to cut himself.

Nurse Ralph conducted the body cavity search of plaintiff in a private receiving cell before 10:33 a.m. on October 1, 2006.  No female personnel or any other inmates were present during the search.   Unable to remove the razor from plaintiff's anus, Ralph determined that plaintiff should be transported to the Aspirus Hospital emergency room. After the razor was removed at the hospital later that morning, plaintiff returned to the jail.

At the hospital, the practitioner treating plaintiff ordered plaintiff to be returned to the hospital on October 4, 2006 for a x-ray to determine whether a staple plaintiff had ingested had passed safely through his system.

Defendant Pellowski was not working at the Marathon County jail on October 1, 2006. Defendant Beaudry did not start work at the jail until 2:50 p.m. on October 1, 2006.

### D. Plaintiff's Psychological Evaluation

On October 4, 2006, corrections officers transported plaintiff back to the Aspirus emergency room for a followup x-ray. Plaintiff was admitted to the hospital and remained there until October 7, 2006. (Neither party explains why plaintiff remained in the hospital for three days after having an x-ray.) While he was in the hospital, various corrections officers from the jail provided 24-hour supervision. None of the defendants were present at the hospital.

On October 6, 2006, Doctor Deep Kumar Varma, M.D., understood a psychiatric consultation of plaintiff at the hospital. (Neither party explains why this examination was performed.) Doctor Varma's written recommendation stated in relevant part:

> Medical recommendation is for continued incarceration at the Marathon County Jail or equivalent forensic psychiatric facility for detention purposes pending resolution of court proceedings. Medical recommendation is made for continued isolation of the patient, with potential suicide watch while at the Marathon County Jail. No specific acute lethality concerns are present at the

7

current time; specifically, apart from passive death wish, the patient denies active suicidal ideation, intent, or plan for the past 72 hours. . . .  Otherwise specific medical recommendation is for individual therapist to be assigned to the patient while at the Marathon County Jail in order to help the patient negotiate significant severe psychosocial stressors superimposed on his own history . . . .  Likewise, consultation with forensic psychiatrist at the Marathon County Jail is recommended by this examiner.   Inpatient psychiatric hospitalization in an acute care setting is not viewed at present to be least restrictive form of mental health care medically recommended given appropriate containment at the Marathon County Jail, with specific recommendation at this time for forensic psychiatric intervention in that facility or at the North Central Behavioral Health Facility.

Dickman Aff., dkt. #86-7, at 2.  Plaintiff was transported back to the jail on the evening of October 7, 2006.

Defendants Westcott and Pellowski were not working at the jail on October 7, 2006 when plaintiff was transported back from Aspirus and were not aware of Dr. Varma's recommendations.  Defendant Gleason did not work at the jail from October 7 through October 10, 2006 and was not aware of Dr. Varma's recommendations.

Defendant Wiskow learned of Doctor Varma's recommendations sometime after his return to work on October 9, 2006.  Defendant Wiskow scheduled plaintiff to see the North Central Health Care mental health crisis staff at 4:15 p.m. on October 12, 2006 during the staff's next scheduled visit at the jail.

Defendant Dickman believes he was aware of Doctor Varma's recommendation regarding plaintiff by October 9, 2006 at the latest.  Dickman recalls being informed at some

8

point during this time that plaintiff had been scheduled to see the North Central Health Care staff at the jail, but was not aware until after this lawsuit was commenced that this appointment did not take place.

On October 11, 2006, plaintiff swallowed 14 diphen pills and a piece of metal from his cell sink. Plaintiff was transported to the Aspirus Hospital emergency room. After hospital staff cleared him, plaintiff was returned to the jail with instructions for Nurse Ralph concerning followup treatment should any complications occur. Defendant Westcott placed plaintiff in a waist belt and handcuffs on his return because he had to reside in an unsecured receiving cell while his cell sink was being repaired. Later that day, plaintiff complained of stomach pains and was inspected by a physician from Wausau Family Medicine.

On October 11, defendant Dickman issued a "Special Management Conditions" memorandum, regarding the specific conditions being placed on plaintiff given his continued behavior. The memorandum stated that:

Due to [plaintiff's] continued self-destructive behavior the following conditions are imposed on him:

1. [Plaintiff] will remain in leg restraints and waist and wrist restraints at all times except for when he uses toilet facilities.

2. [Plaintiff] will be under direct observation of corrections staff, a minimum of two officers (males) while using toilet facilities.

3. [Plaintiff] will be allowed to shower three times per week. Tuesday, Thursday and Saturday during the 3:00 p.m. to 11:00 p.m. shift. [Plaintiff]

9

will shower with wrist restraints for a period of three minutes only and will be under the direct, constant supervision of two corrections officers (males) while using the shower.

4. [Plaintiff] will be provided finger food only. Payette's meals are to be served him on a paper plate only. Paper plates are stored on or in the medical supply cabinet in the Booking Room.

5. [Plaintiff] will not be provided the following items unless ordered by a corrections supervisor: Pencil, Paper, Books, Magazines, Over the Counter Medications, Razors, etc.

6. [Plaintiff] will be allowed to read personal or legal mail while under the direct supervision of corrections staff and only after the mail has been opened and inspected. The mail will be removed from his cell and placed in his property after it is read.

7. These conditions remain in place unless changed in writing by the Jail Administrator.

Dickman Aff., dkt. #86-2, exh. A.

On October 12, 2006, plaintiff was transported to the Aspirus Hospital for surgery to remove the metal sink piece he had swallowed the previous day. After the procedure, he was transported back to the jail at approximately 9 p.m. Because he was at the hospital, plaintiff missed the scheduled 4:15 p.m. appointment with the North Central Health Care staff. Defendant Wiskow rescheduled plaintiff's appointment with the mental health crisis staff member for the next scheduled visit to the jail on October 19, 2006.

On Saturday October 14, 2006, plaintiff reported that he had broken the plastic buckle on his restraints and swallowed the plastic pieces. Corrections officers took him again

10

to the Aspirus Hospital, where he was treated.  He returned at approximately 6:30 p.m. that day.  From the evening of October 14, 2006 through the time he was transferred to New Lisbon Correctional Institution on the morning of October 17, 2006, plaintiff was under constant suicide watch by jail staff.

OPINION

A.  Strip Search

Plaintiff's strip search claim was not addressed in the court's previous summary judgment order.  Payette, 284 Fed. Appx. at 353.  Therefore, I will determine whether the undisputed facts establish that defendants Pellowski and Beaudry are entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The non-moving party may not simply rest on its allegations; rather, it must come forward with specific facts that would support a jury's verdict in its favor.  Van Diest Supply Co. v. Shelby County State Bank, 425 F.3d 437, 439 (7th Cir. 2005).

In his amended complaint, plaintiff alleged that on October 1, 2006, defendant Pellowski ordered that a body cavity "be performed in a receiving call in plain view of male and female officers as well as other inmates" and that defendant Beaudry consistently taunted him during the search.  Dkt. #71, at 3.  However, the undisputed facts show that neither Pellowski nor Beaudry was present at the Marathon County jail at the time of the

11

strip search.  Therefore, defendants could not have conducted the search and cannot be held liable for any constitutional violation stemming from the alleged illegal strip search.  <u>Gentry v. Duckworth</u>, 65 F.3d 555, 561 (7th Cir. 1995) (individuals may not be held liable under § 1983 unless personally involved in plaintiff's alleged constitutional violation).

In his response to defendants' motion, plaintiff appears to contend that other unnamed "jail personnel" are liable for conducting the alleged illegal search.  However, plaintiff never named in his complaint any other jail personnel who were responsible for his search.  Therefore, there is no defendant who could be held liable for the alleged illegal search.  According to the undisputed facts, the only named defendant that was actually present during the search was defendant Wiskow, who determined that medical staff would have to perform a body cavity search of plaintiff and called Nurse Ralph to do so.  However, plaintiff has not brought a claim against Wiskow for the illegal search.  Further, even if plaintiff had brought a claim against Wiskow, he has failed to establish that a reasonable trier of fact could find that the search was conducted to humiliate or inflict psychological pain.

The search was not conducted in an atypical manner.  Plaintiff has offered no facts that any jail personnel taunted him or treated him in a humiliating manner.  Plaintiff cannot rely on his amended complaint to create a dispute of material fact regarding his claim when he has offered no additional evidence that indicates or even suggests an intent to humiliate

12

or inflict psychological harm.  Roger v. Yellow Freight Systems, Inc., 21 F.3d 146, 148 (7th Cir. 1994) ("the nonmoving party may not rest on the allegations in the pleadings but must offer specific evidence demonstrating a factual basis on which he is entitled to relief"); see also Morgan v. Harris Trust & Savings Bank, 867 F.2d 1023, 1026 (7th Cir. 1989) ("Summary judgment will not be defeated simply because issues of motive or intent are involved, and is proper when the plaintiff fails to indicate any motive or intent to support plaintiff's position").

The undisputed facts also show that the search occurred in a private receiving cell with no other inmates or female personnel physically present.  Plaintiff argues that even if female staff were not physically present in the receiving cell to witness the body cavity search, they could still see into the room.  Although plaintiff did not properly dispute defendants' proposed fact that no female staff were present during the search, plaintiff cites his affidavit to support his contention that female staff could view the search and that one employee named "Wendy" screamed during the search.  Even if I take plaintiff's affidavit into consideration, the search conducted on him does not rise to the level of a constitutional violation.  In Johnson v. Phelan, 69 F. 3d 144 (7th Cir. 1995), the Court of Appeals for the Seventh Circuit held that the Eighth Amendment is not violated when a guard who is the opposite sex of the prisoner views the prisoner while he or she is naked.  The rationale of this decision is that it would compromise security to extend a prisoner's right to privacy to cover

13

these situations.  Hudson v. Palmer,  468 U.S. 517, 527 (1984) ("it would be literally impossible to accomplish the prison objectives [of safety and security] if inmates retained a right of privacy in their cells"); Johnson, 69 F. 3d at 146 ("[C]onstant vigilance without regard to the state of the prisoners' dress is essential.  Vigilance over showers, vigilance over cells—vigilance everywhere, which means the guards gaze upon naked inmates.").  Therefore, defendants' motion for summary judgment on plaintiff's strip search claim will be granted.

## B.  Deliberate Indifference to Mental Health Needs

Judge Shabaz addressed plaintiff's deliberate indifference claim, but the Court of Appeals for the Seventh Circuit found that a question of material fact remained whether plaintiff's confinement without mental health treatment constituted deliberate indifference. Specifically, the court of appeals found that "the seven days that [plaintiff] remained in restraints without mental health treatment after the hospital alerted jail officials to his need for such treatment is evidence that jail officials disregarded a significant risk to his health." Payette, 284 Fed. Appx. at 352.

Defendants argue that summary judgment is proper as to defendants Hoenisch, Beaudry, Gleason, Westcott, Schaefer, Pellowski and Rothering because they had no knowledge that plaintiff needed psychiatric treatment.  I agree.  Plaintiff must show that prison officials have a subjective awareness of plaintiff's serious mental health needs, Wynn

14

v. Southward, 251 F.3d 588 (7th Cir. 2001) (prison officials must be "subjectively aware of the prisoner's serious medical needs and disregarded an excessive risk that a lack of treatment posed"). He fails to make this showing.

The undisputed facts establish that defendants Hoenisch, Beaudry, Gleason, Westcott and Pellowski did not know that plaintiff required mental health treatment. The facts are silent with respect to defendants Scaefer or Rothering. Because plaintiff fails to address defendants' argument in his opposition brief, I may infer that he has waived it. Wojtas v. Capital Guardian Trust Co., 477 F.3d 924, 926 (7th Cir. 2007). Therefore, I will grant defendants' motion for summary judgment as to defendants Hoenisch, Beaudry, Gleason, Westcott, Schaefer and Rothering.

Plaintiff argues that defendant Pellowski knew that he needed treatment for his condition because she was the supervisor on October 14, 2006, the day that a Dr. Ryan at Aspirus Hospital recommended that plaintiff have an acute psychiatric evaluation. Although plaintiff does not have direct proof that Pellowski knew about the report, plaintiff argues that knowledge can be inferred from Dr. Ryan's report. I note that plaintiff did not present the fact of Dr. Ryan's recommendation in accordance with the court's summary judgment procedures and that he supports it with an exhibit that defendants argue is not properly authenticated. In addition, defendants have submitted an affidavit from defendant Pellowski, averring that she never saw the alleged report by Dr. Ryan. Plaintiff relies solely

15

on inference to prove Pellowski's knowledge. He has offered no evidence to rebut Pellowski's averment that she did not know about Dr. Ryan's report. Accordingly, I will grant defendant's motion for summary judgment with respect to defendant Pellowski.

However, with respect to Dickman and Wiskow, defendants have offered no arguments or new facts addressing the court of appeals' finding that disputed issues of material fact remain as to whether these defendants were deliberately indifferent. It is undisputed that both Dickman and Wiskow knew about Dr. Varma's recommendation that plaintiff have psychiatric treatment by October 9, 2006 and that plaintiff did not receive any mental health treatment between October 9 and 17, 2006. Further, it is undisputed that plaintiff was placed in restraints from October 11 until October 17, 2006 and was taken to the emergency room on October 14, 2006 because he tried to swallow pieces of his restraints. In its order remanding this case, the court of appeals took particular note of defendants failure to procure any treatment for plaintiff while he was placed in restraints for an extended duration. Payette, 284 Fed. Appx. at 352.

Defendants contend that Dickman and Wiskow were not deliberately indifferent to plaintiff's mental health needs because defendant Wiskow scheduled plaintiff for a consultation with a member of the North Central Health staff on October 10, 2007. However, plaintiff never met with a mental health specialist because he was undergoing surgery at the Aspirus Hospital during the appointment. Essentially, defendants argue that

16

intervening forces and not their inaction was the cause of plaintiff's lack of treatment.

That defendant Wiskow scheduled an appointment that plaintiff missed does not absolve him or defendant Dickman of responsibility for their failure to secure treatment for plaintiff, nor does the fact that North Central Health Care provides only weekly visits. Both defendants were aware of the severity of plaintiff's condition because of his need for restraints and Dr. Varma's recommendation, and yet they failed to secure treatment for plaintiff. I conclude that a reasonable jury could find that these defendants were deliberately indifferent. Accordingly, this case will go to trial on the issue whether defendants Dickman and Wiskow violated plaintiff's Eighth Amendment rights when they failed to secure mental health treatment for him between October 9, 2006 and October 17, 2006.


ORDER

IT IS ORDERED that:

1. The motion for summary judgment brought by defendants Randy Honeisch, Bob Dickman, Seth Wiskow, Cary Pellowski, William Beaudry, Debra Gleason, Shelia Westcott, Michael Schaefer and Dennis Rothering is GRANTED with respect to plaintiff Allen Payette's illegal strip search claim against defendants Pellowski and Beaudry and plaintiff's deliberate indifference claim against defendants Randy Honeisch, Cary Pellowski, Debra Gleason, Shelia Westcott, Michael Schaefer and Dennis Rothering.

17

2.  Defendants' motion for summary judgment is DENIED with respect plaintiff's deliberate indifference claim against defendants Bob Dickman and Seth Wiskow.  This case will go trial on plaintiff's claim that defendants Dickman and Wiskow were deliberately indifferent to plaintiff's serious mental health needs while incarcerated at the Marathon County jail between October 9, 2006 and October 17, 2006.

Entered this 16th day of June, 2009.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge