IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ALLEN PAYETTE,

                                                                                         OPINION and ORDER

                 Plaintiff,

                                                                                         07-cv-242-bbc

      v.

BOB DICKMAN;
and SETH WISKOW,

                 Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Following a trial on plaintiff Allen Payette's claim that defendants Bob Dickman and Seth Wiskow were deliberately indifferent to his mental health needs in violation of the Eighth Amendment, the jury returned a verdict in favor of defendants. Plaintiff, who was represented at trial by Adam Walsh but is proceeding pro se at this time, has filed two motions for a new trial. Dkt. ##189, 196. He has also filed numerous other motions, including a motion for sanctions against defendants and several motions regarding his appeal. I stayed a decision on plaintiff's motions for a new trial pending supplemental briefing on his claim that defense counsel showed the jury an unredacted version of an exhibit containing references to plaintiff's recent sexual assault conviction in violation of a

1

pretrial order excluding that information. Now, after receiving the supplemental briefs and reviewing the trial record, I conclude that plaintiff is not entitled to a new trial. Also, I will deny plaintiff's motion for sanctions, grant his motions for leave to proceed in forma pauperis on appeal and for preparation of transcripts at government expense and deny his motion for appointment of counsel on appeal.

The following summary of relevant facts is drawn from the trial record.

FACTS

During the time relevant to his claims, plaintiff Allen Payette was incarcerated at the Marathon County jail. Defendant Bob Dickman is the jail administrator and defendant Seth Wiskow is a correctional supervisor. In July through October of 2006, plaintiff engaged in various acts of self-harm and destruction of property in attempts to gain materials for use in acts of self-harm. On October 4, 2006, plaintiff was sent to the hospital for treatment after swallowing a staple. On October 6, 2006, plaintiff met with psychiatrist Dr. Deep Varma. Dr. Varma stated in his report that plaintiff suffered from "depressive disorder" and a "passive death wish," but added that "[n]o acute lethality concerns [were] present" because plaintiff "denie[d] active suicidal ideation, intent, or plan for the past 72 hours." Varma recommended that plaintiff see a therapist and forensic psychiatrist at the Marathon County jail rather than be hospitalized for inpatient psychiatric treatment. Varma recommended

2

also that plaintiff continue to be placed in isolation, with "potential sitter for suicide watch." Plaintiff returned to the Marathon County jail on October 7, 2006.

Defendant Dickman testified that he became aware of Varma's recommendations on October 10, 2006. He talked to defendant Wiskow, who scheduled plaintiff an appointment with outside "crisis intervention" staff, that is, social workers who would customarily be called to assess prisoner's mental health and report to a psychiatrist. The appointment was set for Thursday, October 12, 2006, to coincide with the regularly scheduled Thursday crisis staff visits to the jail. Wiskow testified that Dickman told him to schedule plaintiff for a regular visit because he "was not suicidal at that time." Plaintiff was kept in isolation, placed under 15-minute observational watch and was on suicide watch for at least some of the time.

At some point during the night of October 10 or the early morning of October 11, 2006, plaintiff broke off a jagged metal piece of the sink in his cell and swallowed it, along with 14 Benadryl pills. Plaintiff was taken to the hospital and returned the same day to the jail, where he was evaluated by the jail's medical staff. On the morning of October 12, 2006, plaintiff was in court for his sentencing on previous charges. After returning to the jail, plaintiff went to the hospital for surgery to remove the piece of metal he had swallowed. Because he was in the hospital, he missed his appointment with the crisis staff. Defendant Dickman issued a memorandum imposing certain conditions on plaintiff, including keeping him in restraints at all times except when he would have to use the toilet. None of the

3

doctors treating plaintiff after this incident, either at the hospital or jail, raised the issue of mental health care with defendants.

After defendant Wiskow became aware that plaintiff had missed his October 12, 2006 appointment with crisis staff, he rescheduled plaintiff's appointment for the crisis staff's next regular visit on October 19, 2006. After Wiskow learned that plaintiff was going to be transferred to prison on October 17, he did not attempt to move up the October 19 appointment with crisis staff.

On Saturday, October 14, plaintiff broke off part of his plastic restraints and swallowed it and cut himself with eggshells. He was taken to the emergency room and then returned to the jail. Dickman and Wiskow did not become aware of this attempt at self-harm until Monday, October 16, because neither of them worked over the weekend. Wiskow did not consider these attempts at self-harm to be suicide attempts. It was his belief from previous experiences with plaintiff that plaintiff's goal was to be transferred to the health care center, where the food and environment were better.

Plaintiff was transferred to the Dodge Correctional Institution at approximately 5 a.m. on October 17, 2006. The jail's medical staff prepared a medical transfer report to send to the Dodge Correctional Institution that included Dr. Varma's report.

4

OPINION

A. Motions for a New Trial

Although plaintiff's motions refer to both Fed. R. Civ. P. 59 and 60, I construe them as though they were brought under Rule 59 because they were filed within 10 days of the entry of judgment. Russell v. Delco Remy Div. of Gen. Motors Corp., 51 F.3d 746, 749 (7th Cir. 1995). Rule 59 allows a new trial if "the verdict is against the weight of the evidence . . . the damages are excessive, or . . . for other reasons, the trial was not fair to the party moving." Kapelanski v. Johnson, 390 F.3d 525, 530 (7th Cir. 2004) (internal quotations omitted). However, a new trial should be granted "only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks [the court's] conscience." Davis v. Dept. of Corrections, 445 F.3d 971, 979 (7th Cir. 2006) (internal quotations omitted).

Plaintiff advances three reasons for vacating the judgment and giving him a new trial: (1) defense counsel committed misconduct by showing the jury evidence excluded by a pretrial order; (2) plaintiff's counsel was ineffective; and (3) the verdict was against the weight of the evidence.

1. Defense counsel misconduct

Plaintiff asserts that his defense counsel committed misconduct by showing the jury

5

an exhibit containing references to plaintiff's recent sexual assault conviction, but he lacks first-hand knowledge to that effect. In his affidavit, plaintiff avers that the two correctional officers who transported him to the trial told him that they saw defense counsel display an exhibit to the jury that included references to the sexual assault conviction. Their doing so would have violated a pretrial order excluding such evidence. Perhaps understanding that his affidavit does not include admissible proof of what occurred at trial, plaintiff has submitted a motion in which he asks the court to compel these correctional officers to sign affidavits describing what they saw. Dkt. #209. I will deny this motion as unnecessary, because defendants have clarified the record on this point.

Defendants explain that in the course of redacting excluded information from their exhibits, they failed inadvertently to redact references to plaintiff's sexual assault conviction from their trial exhibit #517, which was a psychiatric report from the New Lisbon Correctional Institution dated January 18, 2007. Defendants used the exhibit during cross-examination of plaintiff in an effort to show that plaintiff was not actually suicidal while at the Marathon County jail. The exhibit included statements that "Mr. Payette was referred urgently by clinical services due to his feeling despondent after being returned to prison on a new Sexual Assault charge" and "[h]e subsequently sexually assaulted his own daughter and has been returned to prison for a significant sentence, which is making him feel despondent . . . ." Defendants state further that at trial on the following day, defense counsel discovered

6

these references in the process of reviewing what exhibits would be available for the jury. They pointed out the problem to the court, plaintiff and plaintiff's counsel. The exhibit was redacted to remove the former reference but the latter reference remained unredacted from the version given to the jury.

 The parties dispute whether the exhibit was shown to the jury during cross-examination of plaintiff. Neither side knows whether the exhibit was displayed on the video screen visible by the jury or whether it was displayed only on the screens visible by counsel. Also, they dispute whether the correctional officers who plaintiff claims viewed the exhibit could have seen it on plaintiff's counsel's screen rather than the jury's screen. None of the parties seem particularly sure where the exhibit was displayed. However, the issue of what happened during cross-examination is largely irrelevant because there is no dispute that the version of the exhibit given to the jury for its deliberations contained the second, more inflammatory reference to plaintiff's sexual assault of his daughter. Therefore I assume that the jury was given information about plaintiff's sexual assault conviction despite the pretrial order excluding such evidence.

 Defendants argue that any claim of error regarding references to plaintiff's sexual assault conviction is forfeited because plaintiff did not object to these references during trial, and thus a new trial can be ordered only if there was "plain error." I agree. Through counsel, plaintiff had an opportunity to object to any reference to his sexual assault

7

conviction, whether it occurred during cross-examination or was contained in the exhibits sent back to the jury for its deliberations. If exhibit #517 was shown to the jury during cross-examination of plaintiff, plaintiff's counsel could have objected to it. With regard to the version of exhibit #517 given to the jury for its deliberations, the parties discussed the first reference in the exhibit after defendants brought it to the court's attention, and plaintiff's counsel had an opportunity to make sure that the exhibit contained no reference to the sexual assault conviction.

I note that in his briefs, plaintiff argues that defendants are incorrect to say that "plaintiff" failed to object to the sexual assault reference going to the jury because he was not present while counsel reviewed the exhibits with the court. However, Walsh was present during this time, and because he was plaintiff's lawyer, his actions or inactions are considered to be plaintiff's. (To the extent plaintiff may be confused about treating the actions of Walsh as those of plaintiff himself, it is customary for parties and the court to refer to the actions of a party's counsel as the action of the party itself. For example, throughout this opinion I state that "defendants argue" certain points even though the arguing is actually done by defendants' counsel. In any event, the court is well aware of when plaintiff was or was not present during the proceedings.)

Plaintiff's failure to object to the references forfeits any claim of error, so the only way plaintiff can be given a new trial is if the jury's exposure to information regarding the sexual

8

assault conviction was plain error. Stringel v. Methodist Hosp. of Indiana, Inc., 89 F.3d 415, 421 (7th Cir. 1996) ("Error may not be predicated upon a ruling which admits or excludes evidence . . . . Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court.") (citing Fed. R. Evid. 103).

The plain error doctrine "has an extremely limited application (at most) in the civil context." Ammons-Lewis v. Metropolitan Water Reclamation District of Greater Chicago, 488 F.3d 739, 744 (7th Cir. 2007). "Plain" is synonymous with "clear" or "obvious." United States v. Olano, 507 U.S. 725, 734 (1993). "'The plain error doctrine may be available to review evidentiary rulings to which no objection was made at trial if a moving party can demonstrate (1) that exceptional circumstances exist, (2) that substantial rights are affected, and (3) that a miscarriage of justice will result if the doctrine is not applied.'" Stringel, 89 F.3d at 423 (quoting Prymer v. Ogden, 29 F.3d 1208, 1214 (7th Cir. 1994)). Generally, to succeed on a motion for a new trial on the basis of plain error, a party needs to show that the outcome of the trial "'probably would have been different without the error.'" Production Specialties Group, Inc. v. Minsor Systems, Inc., 513 F.3d 695, 699 (7th Cir. 2008) (quoting United States v. Pree, 408 F.3d 855, 869 (7th Cir. 2005)).

Plaintiff argues that the plain error doctrine should apply because the sexual assault references "could [have] caused the jury to be biased against [him]." There is no question

9

that the error was "plain" (that is, "clear" or "obvious") because such references clearly should have been excluded under the pretrial order ruling on the parties' motions in limine. However, I conclude that plaintiff is not entitled to a new trial under the plain error doctrine because he fails to show that the outcome of the trial probably would have been different without the error.

I reach this conclusion for several reasons. First, it is unclear whether the jury was even aware of the error. At most, the jury was exposed to the sexual assault references twice: (1) during cross-examination of plaintiff; and (2) on the copy of the exhibit given to the jury for its deliberations. As I noted above, the parties dispute whether the exhibit was shown to the jury during cross-examination of plaintiff. Even assuming that it was shown on the screens visible to the jury, it would have been displayed only while defendants asked plaintiff whether he had complained about his treatment at the Marathon County jail to the New Lisbon Correctional Institution psychiatrist at the January 18, 2007 appointment. Defense counsel did not point out the references during cross-examination and did not use the exhibit to ask plaintiff about prior bad acts or convictions. In fact, neither side made any mention of the sexual assault in any of the testimony or argument at trial. The jury's limited exposure to the sexual assault references makes it unlikely that the error changed the outcome of the case and militates against invoking the doctrine of plain error. 21 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5043 (3d ed. 2004) ("An isolated

10

reference to inadmissible evidence is less likely to be plain error than repeatedly pounding the jurors over the head with it.") (citing Guam v. Fegurgur, 800 F.2d 1470, 1473 (9th Cir. 1986) (brief improper questioning not referred to in closing argument not plain error)).

Next, even if the jury had been aware of the error, it did not appear to have any effect on the outcome of the case. This is evident from the fact that the jury sided with plaintiff on the first special verdict question: whether plaintiff had a serious mental health need in October 2006. One of the major issues at trial was whether plaintiff was actually suicidal in October 2006 or whether he committed various acts of self-harm simply to get out of the receiving cell in which he was being monitored and move to the health care center, where the food and environment were better. Plaintiff testified that he was suicidal, but defendant Wiskow testified that he did not consider plaintiff's acts of self-harm to be legitimate suicide attempts and defense counsel's closing argument focused in part on plaintiff's credibility. Defense counsel noted that convicted felons' credibility can be questioned in a courtroom and put forth the theory that plaintiff would do anything to get out of the receiving cell. Had the jury been biased by the reference to plaintiff's sexual assault, one would have expected the jury to answer "no" to the verdict question. Even with the erroneous admission of plaintiff's sexual assault conviction to further damage his credibility, the jury answered "yes" to the verdict question asking whether plaintiff had a serious mental health need.

This leaves the possibility that the jury was biased by the references to plaintiff's

11

sexual assault conviction, but this bias did not manifest itself until the second verdict question, which was whether defendants were deliberately indifferent to plaintiff's serious mental health needs. This seems unlikely in light of the extensive evidence adduced at trial that supports the jury's answer of "no" to this question.

Once the jury concluded that plaintiff suffered from a serious mental health need, the case boiled down to whether defendants actually knew of the risk of serious harm to plaintiff's health and consciously disregarded that risk by failing to take reasonable measures to deal with it between October 10, 2006 (when defendants became aware of Dr. Varma's recommendations) and October 17, 2006 (when plaintiff was transferred out of the jail permanently). The mental health concern at issue was plaintiff's need for treatment as outlined by Dr. Varma following the October 6, 2006 appointment with plaintiff. The jury heard largely undisputed testimony regarding Dr. Varma's recommendation for mental health treatment, plaintiff's acts of self-harm and the steps defendants took to arrange an appointment for plaintiff with North Central Health Care crisis staff.

In his closing argument, plaintiff's counsel argued that although defendants might have been justified in not getting plaintiff an immediate mental health appointment with the crisis staff upon receiving Varma's report, they should have attempted to get him one as quickly as possible following his suicide attempt late on October 10, when it was apparent that he was suicidal. Plaintiff argues that the need for immediate treatment was made even

12

clearer by his suicide attempt on October 14, 2006.

However, given defendants' actions and the short period of time plaintiff went without treatment, the jury could have concluded that defendants were not deliberately indifferent to plaintiff's mental health needs. First, defendants' conduct in general was consistent with an effort to meet plaintiff's health needs. They followed Varma's recommendations for isolation and suicide watch and they arranged for prompt medical treatment following the suicide attempts. This would tend to show that defendants tried to be responsive to plaintiff's needs. On the more precise issue of Varma's recommendation for mental health treatment, defendants attempted to meet the recommendation by arranging an October 12, 2006 appointment with crisis staff, but plaintiff made that meeting impossible by his own action: swallowing a piece of metal that required surgical removal. None of the doctors treating plaintiff after this incident raised the issue of mental health care with defendants. Defendant Wiskow decided to make plaintiff a new appointment for October 19. Plaintiff questions this in light of his being scheduled for transfer on October 17, but defendant Wiskow testified that he made the October 19 appointment before he learned of the planned October 17 transfer.

Plaintiff points to the Saturday, October 14 suicide attempt as evidence that his mental health needs were even more pressing, but defendants were not aware of that suicide attempt until Monday, October 16, when they returned to work. Plaintiff was transferred

13

at approximately 5 a.m. on October 17, leaving only a day between defendants' learning of the new suicide attempt and plaintiff's transfer in which they could have sought immediate mental health treatment for him. Defendants' decision to make appointments in line with the crisis staff's regular Thursday schedule was not the most aggressive choice they could have made, but it is difficult to argue that it amounted to deliberate indifference. Defendants included Varma's recommendations in the medical transfer report sent with plaintiff when he was transferred to the Dodge Correctional Institution.

It is not probable that even if the jury had not been exposed to the references to plaintiff's sexual assault, it would have found that defendants were deliberately indifferent. Thus I conclude plaintiff should not receive a new trial under the plain error doctrine.

2. Ineffective assistance of counsel

Plaintiff argues that he should be given a new trial because his counsel was ineffective in numerous ways, including not calling certain witnesses, failing to ask certain questions of witnesses at trial and allowing the unredacted exhibit #517 to go back to the jury. With his reply brief, he submits documents such as medical and jail records that he calls "new evidence," but which are actually documents from the summary judgment record that counsel chose not to use at trial. I assume from this submission that plaintiff takes issue with counsel's failure to introduce the documents at trial.

14

Civil litigants have no constitutional right to effective assistance of counsel. Thus, even if plaintiff could show that Walsh were ineffective, I cannot grant him a new trial on this ground. Stanciel v. Gramley, 267 F.3d 575, 581 (7th Cir. 2001) (claim of ineffective assistance of counsel is not proper grounds for reversal in civil matter). As with any civil litigant, plaintiff's exclusive remedy against his attorney is a separate suit for legal malpractice or breach of fiduciary duty. Bell v. Eastman Kodak Co., 214 F.3d 798, 802 (7th Cir. 2000).

3. Weight of the evidence

Finally, plaintiff seeks a new trial because he believes that the verdict was contrary to the weight of the evidence. A verdict is contrary to the weight of the evidence only if no rational jury could have rendered the verdict. Staub v. Proctor Hospital, 560 F.3d 647, 658 (7th Cir. 2009). Put another way, a jury's verdict should not be set aside "if a reasonable basis exists in the record to support that verdict." Kapelanski, 390 F.3d at 530 (7th Cir. 2004). As I discussed above, there was a reasonable basis in the record to support the verdict, so plaintiff is not entitled to a new trial.

B. Motion for Sanctions

Plaintiff has filed a motion for sanctions against defendants for violating the pretrial

15

order prohibiting reference to his sexual assault conviction, dkt. #235. Although the Federal Rules of Civil Procedure cited by plaintiff (Rules 11, 16 and 37) in support of his motion for sanctions do not apply to the type of violation at issue in this case, the court has an inherent authority to regulate litigants' behavior during litigation and impose sanction where necessary. Ty Inc. v. Softbelly's Inc., 517 F.3d 494, 498-99 (7th Cir. 2008).

However, the court may impose sanctions under its inherent authority only when a "party act[s] in bad faith, vexatiously, wantonly, or for oppressive reasons." Corley v. Rosewood Care Center, Inc., 142 F.3d 1041, 1058 (7th Cir. 1998) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 45-46, 50 (1991)) (internal quotations omitted). Imposing a sanction under a court's inherent powers is a last resort, reserved for truly egregious conduct. Defendants' conduct does not rise to that level. Compare id. (party and his attorney engaged in extensive misconduct, including setting up sham trust to hide property, abusing legal process in effort to avoid performance of agreement to turn over property and continuing to file meritless motions while avoiding discovery obligations despite repeated warnings that court would not tolerate further misconduct); and Taurus, IP, LLC v. Daimler-Chrysler Corp., 559 F. Supp. 2d 947, 973 (W.D. Wis. 2008) (plaintiff hired defendant's former employee and encouraged him to threaten his former supervisor in Chrysler's legal department that he would file charge of misconduct with bar association if supervisor did not testify in a specific manner about actions he had allegedly directed employee to take while

16

working at Chrysler).

I am persuaded that defendants' failure to note the reference to plaintiff's sexual assault was an oversight and not an intentional act. After all, it was defense counsel that pointed out his own error in failing to redact exhibit #517 before cross-examination of plaintiff. Further, it is difficult to ascribe bad faith to defendants' actions when, as discussed above, the error was on the periphery of the case; defendants did not elicit any testimony regarding the sexual assault or bring it up in closing arguments. Therefore, I will deny plaintiff's motion for sanctions.

### C. Notice of Appeal

This leaves plaintiff's notice of appeal and related motions. First, he has filed a motion for leave to proceed in forma pauperis on appeal. Dkt. #213. Because plaintiff was granted leave to proceed in forma pauperis in this court, he "may proceed on appeal in forma pauperis unless . . . the district court shall certify that the appeal is not taken in good faith or shall find that the party is otherwise not entitled so to proceed." Fed. R. App. P. 24(a). Upon review of the record, I cannot find that plaintiff is not entitled to proceed in forma pauperis on appeal, and I cannot certify that an appeal would be taken in bad faith. Therefore I will grant his motion to proceed on appeal in forma pauperis.

Next, plaintiff has filed three motions for preparation of transcripts at government

17

expense pursuant to 28 U.S.C. § 753(f). Dkt. ##197, 214, 215. I conclude that without access to the trial transcript, it would be extremely difficult for the court of appeals to assess plaintiff's arguments on appeal. Therefore, his first motion for preparation of the trial transcript at government expense will be granted. His second and third motions will be denied as unnecessary.

Finally, plaintiff has filed a motion for appointment of counsel on appeal, dkt. #216. I will deny this motion because it is not properly raised in this court. If plaintiff wishes appointment of counsel on appeal, he will have to make his request directly to the Court of Appeals for the Seventh Circuit.

ORDER

IT IS ORDERED that

1. Plaintiff Allen Payette's motion to compel witnesses to sign affidavits, dkt. #209, is DENIED as unnecessary.

2. Plaintiff's motions for a new trial, dkt. ##189, 196, are DENIED.

3. Plaintiff's motion for sanctions, dkt. #235, is DENIED.

4. Plaintiff's motion for leave to proceed in forma pauperis on appeal, dkt. #213, is GRANTED.

5. Plaintiff's first motion for preparation of transcripts at government expense, dkt.

#197, is GRANTED. His second and third motions for preparation of transcripts at government expense, dkt. #214, 215, are DENIED as unnecessary.

6. Plaintiff's motion for appointment of counsel on appeal, dkt. #216, is DENIED without prejudice to his refiling the motion in the court of appeals.

Entered this 23rd day of November, 2009.

                              BY THE COURT:

                              /s/

                              _____
                              BARBARA B. CRABB
                              District Judge